O'NEAL STEEL, Petitioner,

v.

VANDERBURGH COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS, Vanderburgh County Assessor, & Center Township Assessor, Respondents.

No. 49T10–0204–TA–42.

Tax Court of Indiana.

July 10, 2003.

Douglas J. DeGlopper, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.

FISHER, J.

O'Neal Steel (O'Neal) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) dismissing its Petitions for Correction of Error (133 Petitions) for the 1996–1998 tax years (years at issue). The issue is whether the Indiana Board erred in dismissing those petitions. For the following reasons, the Court AFFIRMS the Indiana Board's final determination.

### FACTS AND PROCEDURAL HISTORY

O'Neal owns a commercial improvement in Center Township, Vanderburgh County, Indiana. For the years at issue, the improvement was assessed using the General Commercial Industrial (GCI) pricing schedule pursuant to Indiana's assessment rules.[1] In May 2000, O'Neal filed three 133 Petitions with the Vanderburgh County Auditor, arguing that because its improvement was a "kit building,"[2] the

---

1. *See* IND. ADMIN. CODE tit. 50, r. 2.2–11–6 (Sched. A.2) (1996).

2. "Generally, kit buildings are made of light[-]weight and inexpensive materials and are fabricated at central manufacturing facili-

General Commercial Kit (GCK) pricing schedule[3] should have been used to assess it as opposed to the GCI schedule. The Vanderburgh County Property Tax Assessment Board of Appeals (PTABOA) denied O'Neal's 133 Petitions in May 2001.

On June 6, 2001, O'Neal appealed the PTABOA's final determinations to the State Board of Tax Commissioners (State Board). On March 15, 2002, the Indiana Board of Tax Review (Indiana Board)[4] issued one final determination denying relief on O'Neal's 133 Petitions. Specifically, the Indiana Board held that because choosing the applicable pricing schedule requires an assessor's subjective determination, O'Neal could not bring its claim in a 133 Petition.

On April 29, 2002, O'Neal initiated an original tax appeal. On May 30, 2003, the parties presented oral arguments. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. *Id.* (citing IND.CODE § 33-3-5-14.8(e)(1)-(5) (Supp.2001) (quotation marks omitted)).

## Discussion

■ The issue is whether the Indiana Board erred when it determined that O'Neal's 133 Petitions were an inappropriate method by which to appeal the use of the GCI pricing schedule. O'Neal argues that it should be allowed to bring its claim in a 133 Petition because the decision whether or not to apply the GCK pricing schedule does not require a subjective determination. O'Neal, however, is incorrect.

■ During the years at issue, a taxpayer had two methods by which to appeal an assessment. First, a taxpayer could file a 133 Petition to request a correction of errors that resulted from one or more of the following reasons:

(1) The description of the real property was in error.

(2) The assessment was against the wrong person.

(3) Taxes on the same property were charged more than one (1) time in the same year.

---

ties and shipped to the construction site ready for fast and efficient assembly." *Hamstra Builders, Inc. v. Dep't of Local Gov't Fin.*, 783 N.E.2d 387, 390 (Ind. Tax Ct.2003) (internal quotation marks omitted).

3. *See* IND. ADMIN. CODE tit. 50, r. 2.2–11–6 (Sched. A.4) (1996).

4. The Legislature abolished the State Board of Tax Commissioners (State Board). 2001 Ind. Acts 198, § 119(b)(2). Effective January 1, 2002, the Legislature created the Indiana Board of Tax Review (Indiana Board). IND CODE § 6-1.5–1–3 (West Supp.2001); 2001 Ind. Acts 198, § 95.

(4) There was a mathematical error in computing the taxes or penalties on the taxes.

(5) There was an error in carrying delinquent taxes forward from one (1) tax duplicate to another.

(6) The taxes, as a matter of law, were illegal.

(7) There was a mathematical error in computing an assessment.

(8) Through an error of omission by any state or county officer the taxpayer was not given credit for an exemption or deduction permitted by law.

IND.CODE § 6–1.1–15–12(a) (1998). This Court has held that a taxpayer may file a 133 Petition to correct only objective errors in an assessment.[5] *U.S. Steel Corp. v. Lake County PTABOA et al.,* 785 N.E.2d 1209, 1215 (Ind.Tax.Ct.2003). The second method of appeal was the Form 130/131 Petition for Review of Assessment (130/131 Petition), which a taxpayer could file to challenge any element of its assessment, including subjective errors, i.e., those errors that involve the exercise of a tax official's subjective discretion. *See Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1114 (Ind. Tax Ct.1997).

■ Although the choice to use the GCK pricing schedule may seem relatively uncomplicated, it nevertheless requires an assessor's interpretation of the facts surrounding the improvement's type of interior column and roof beam support, which, for a kit building, may include cold form cee channel supports, tapered columns, H-columns, and steel pole (or post) columns. *See Hamstra Builders, Inc. v. Dep't of Local Gov't Fin.,* 783 N.E.2d 387, 390–91

(Ind. Tax Ct.2003). Similarly, where a taxpayer presents a prima facie case that its improvement is a kit building, then an assessor rebuts the taxpayer's showing by articulating "why the improvement's deviations from the basic kit model, if any, increased the cost of the improvement so as to make it uneconomical." *Id.* at 391.

Thus, unlike a determination that an assessor miscalculated the length of an improvement, or that a building component is physically absent from an improvement, the choice of the GCK pricing schedule ultimately turns on judgment calls. *See id.* at n. 4 (indicating that where observable facts support a taxpayer's contention that its improvement qualifies as a kit building, then the burden shifts to the state to inspect the taxpayer's improvement and form its own judgment as to whether the improvement qualifies as a kit building). *See also Bender,* 676 N.E.2d at 1116. Because it does, the choice of the GCK pricing schedule is subjective and cannot be challenged in a 133 Petition. *See Bender,* 676 N.E.2d at 1116. Consequently, O'Neal cannot use a 133 Petition to challenge the assessor's use of the GCI pricing schedule over the GCK pricing schedule. *See id.*

■ In the alternative, O'Neal argues that State Board Instructional Bulletin 92–1 (Instructional Bulletin 92–1) mandates the use of a 133 Petition to appeal the assessment of a kit building. Again, O'Neal is incorrect.

Prior to January 1, 2002, the State Board issued "instructional bulletins" to advise tax officials of "their duties and provide administrative forms to be used by taxpayers, local and county officials as re-

---

5. Therefore, a taxpayer is prohibited from using a 133 Petition to challenge any part of its assessment that implicates a tax official's lawful exercise of subjective discretion. *U.S. Steel Corp. v. Lake County PTABOA et al.,* 785 N.E.2d 1209, 1215 (Ind.Tax.Ct.2003). Other-

wise, a taxpayer could effectively obtain a complete reassessment of its property, which would be an "impermissible expansion" of Indiana Code Section 6–1.1–15–12. *Hatcher v. State Bd. of Tax Comm'rs,* 561 N.E.2d 852, 857 (Ind. Tax Ct.1990).

quired by the various rules of the state board." IND. ADMIN. CODE tit. 50, r. 4.2–1–5 (1996) (repealed). On August 28, 1992, the State Board issued Instructional Bulletin 92–1 to clarify the procedure for taxpayers who requested a 50% reduction in assessed value for a kit building.[6] *See* State Board of Tax Commissioners, Instructional Bulletin 92–1 at 1 (August 28, 1992). Instructional Bulletin 92–1 indicated that to request the reduction for kit buildings (i.e., a "kit building adjustment"), taxpayers were to file a 133 Petition:

> Example 3: Taxpayer files [a 130/131 Petition] within thirty (30) days of receiving the statement for the first installment of *1991 pay 1992* taxes on a structure that qualifies for the adjustment. [A] taxpayer may file an appeal within thirty (30) days of receiving a tax bill if the taxpayer's assessment is changed without serving notice of the change to the taxpayer. In this example, the assessment was not changed, therefore no notice was required. The Petition should be denied and the taxpayer should be advised to file a [133 Petition].

Instructional Bulletin 92–1 at 2 (emphasis added). The question, then, is what effect does Instructional Bulletin 92–1 have on the appeals procedure for kit buildings for the years at issue?

An instructional bulletin "will be effective for the year designated and will remain in effect for subsequent tax years unless specifically rescinded or revised by subsequent directives or instructional bulletins." 50 IAC 4.2–1–5. Although the State Board did not issue a subsequent directive or Instructional Bulletin to rescind or revise Instructional Bulletin 92–1, none was needed. The plain text of Instructional Bulletin 92–1 makes clear that the State Board intended for taxpayers to use the 133 Petition to request a kit building adjustment only for situations where a taxpayer (1) was entitled to the kit building adjustment for 1991 but (2) did not receive it and (3) did not receive notice of a change in assessment. *See* Instructional Bulletin 92–1 at 2. For the 1995 general reassessment, however, *all* taxpayers received a notice of their reassessment. *See* IND.CODE §§ 6–1.1–4–4;[7] 6–1.1–4–22(a)[8] (1993). Therefore, as of the 1995 reassessment year, all taxpayers had a reasonable opportunity to file a 130/131 Petition if they believed they owned a kit building that had been overlooked for a base rate reduction. Thus, the 1995 general reassessment eliminated the problem that the

---

**6.** In 1991, the State Board amended its rules to provide a 50% reduction to the assessed value of "pre-engineered kit-type structure[s]." IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (Scheds. A.1 & A.2) (1992) (repealed). Because some assessors failed to apply the reduction, several taxpayers filed Form 130/131 Petitions for Review of Assessment (130/131 Petitions). At that time, however, a 130/131 Petition could be filed only after a tax official changed a taxpayer's assessment or reassessed its property then gave notice to the taxpayer of the change. *See* IND.CODE § 6–1.1–15–1(a) (1993) (amended by 1993 Ind. Acts 41, § 11). *See also* IND. ADMIN. CODE tit. 50, r. 4.2–3–3 (1992) (providing for the 130/131 Petition appeals procedure) (repealed). Assessors did not notify taxpayers of their failure to give them the 50% reduction;

therefore, under the law, the taxpayers' 130/131 Petitions were void. *See* I.C. § 6–1.1–15–1(a). Instructional Bulletin 92–1 was intended to address this procedural anomaly.

**7.** "A general reassessment of the real property of all the counties of this state shall begin July 1, 1993[and] shall be completed on or before March 1 of [1995]." IND.CODE § 6–1.1–4–4 (1993).

**8.** "If any assessing official or any board ... reassess any real property under the provisions of this article, the official or board shall give notice to the taxpayer, by mail, of the amount of the ... reassessment." IND.CODE § 6–1.1–4–22(a) (1993).

State Board intended to address with Instructional Bulletin 92–1.

Because Instructional Bulletin 92–1, by its own terms, was limited to a unique procedural problem that arose prior to the 1995 general reassessment, it became a nullity as of the 1995 general reassessment and for each assessment year thereafter. *See* 50 IAC 4.2–1–5. Consequently, O'Neal cannot use a 133 Petition to appeal the pricing schedule used to assess its improvement for the years at issue.[9] The Court therefore holds that the Indiana Board did not err in dismissing O'Neal's 133 Petitions.

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the Indiana Board's final determination.

9. O'Neal filed a 130/131 Petition to appeal the assessment of its improvement for the 1999 tax year, seeking the same relief it does here, which the Vanderburgh Property Tax Assessment Board of Appeals (PTABOA) granted. O'Neal suggests that the PTABOA's final determination on its 1999 assessment collaterally estops the Indiana Board from assessing the improvement differently for the years at issue. However, because O'Neal cannot file a 133 Petition for the years at issue, the Court need not address this issue.